705 A.2d 1230

LEANORE OZOLINS, PLAINTIFF–APPELLANT, v. MARIS
OZOLINS, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 22, 1997—Decided February 13, 1998.

Before Judges A.A. RODRIGUEZ and COBURN.

*Bettina E. Munson,* argued the cause for appellant (*Schottland, Manning & Rosen,* attorneys).

*Maris Ozolins,* respondent, argued the cause *pro se.*

The opinion of the court was delivered by

RODRIGUEZ, A.A., J.A.D.

Leanore Ozolins (ex-wife) appeals from the post-divorce judgment order which terminated her right to receive alimony based

partly on her cohabitation with an unrelated adult male. The issue presented is: once a *prima facie* showing of cohabitation has been made, which party should bear the burden of showing that the dependent spouse either contributes support to or is supported by the cohabitant? We hold that a showing of cohabitation creates a rebuttable presumption of changed circumstances shifting the burden to the dependent spouse to show that there is no actual economic benefit to the spouse or the cohabitant.

Maris and Leanore Ozolins were divorced in June 1990 after a twenty-five year marriage. The judgment of divorce incorporated a property settlement agreement (agreement) which provided that ex-husband would pay ex-wife permanent alimony of $1,500 per month "until the death of the Wife, or upon the remarriage of the Wife, whichever shall first occur." The agreement was silent as to the impact on spousal support if the ex-wife cohabited with an unrelated adult male.

Although the agreement required all modifications to be in writing, the parties agreed to several oral modifications between 1990 and 1995. Thus, ex-husband's support was reduced to $1,200 per month and later to $850 per month. In addition, ex-wife agreed to suspend alimony during a period when ex-husband was unemployed. In October 1995, ex-wife moved to enforce payment of alimony in the original amount set by the agreement and to collect arrears. Ex-husband did not respond to the motion. The judge reinstated the original alimony amount and compelled ex-husband to pay arrearages for the accumulated difference.

Ex-husband obtained counsel and moved for reconsideration. He also challenged certain provisions of the judgment. Specifically, he alleged that (1) ex-wife had agreed orally to reduce the alimony payment, not to merely postpone payment of the difference; (2) a reduction in alimony was necessary because ex-wife was cohabiting with A.M., an unrelated adult male; (3) at the time he entered into the agreement, he was suffering from alcoholism; and (4) the fact that he had been diagnosed with prostate cancer constituted a substantial change in circumstances.

At a hearing on the motion, ex-wife testified that subsequent to the divorce, she was employed by Parkway Foods in Florida and earned $15,000 for the year. The following year, her income dropped to $5,000 to $6,000 because she left her employment in order to move back to New Jersey. She was unemployed for most of 1993. That year she earned $5,200. In 1994, ex-wife worked as a waitress and was a part-time sales clerk at Sears. Her earnings that year were $4,000. In 1994, ex-wife also went back to school and received training in a medical assistance program. In 1995, she obtained employment with Jersey Shore Medical Center as an EKG technician and earned $12,000. In 1996, her income was $18,565 which amounted to a $290 net weekly wage.

Ex-wife conceded that in May, 1995, she began living with a male friend, A.M., for economic reasons only. They shared equally the household expenses of $1,100.00 to $1,200.00 per month. The living arrangement with A.M. was not permanent and she intended "to be out on [her] own ... [a]s soon as the economics of this are resolved."

Ex-husband testified that he was self-employed as a construction manager from 1988 to 1992. During that time, he worked on the construction of the New Brunswick Cultural Center, earning between $65,000 and $70,000 gross per year. After the Center was completed, ex-husband had difficulty obtaining new employment. Therefore, in 1992, ex-wife agreed orally to reduce ex-husband's alimony payments to $1,200 per month. The parties never discussed whether the $300 per month balance would be paid in the future. Later that year, ex-husband ceased paying alimony. Ex-wife agreed not to seek support from him while he was unemployed. In January, 1993, ex-husband obtained full-time employment as a project manager for construction with Prismatic Development Corp. at a yearly salary of $65,000. He and ex-wife agreed to $850 per month alimony. Ex-husband paid this amount from January 1993 to November 1994.

In 1994, he was diagnosed with prostate cancer. He also suffered from alcoholism. He submitted medical reports from

New York University Medical Center detailing his prostate problems.

After a two-day hearing, the judge filed a detailed written decision. The judge terminated alimony effective July 1, 1995, and awarded ex-wife $11,400 in arrears to be paid at $300 per week. The judge found that ex-husband had made a *prima facie* showing of cohabitation and ex-wife failed to show facts which would justify a continuing need for support. The judge stated:

> In July of 1995, [ex-wife] admittedly commenced cohabitation with an individual with whom she divides her household expenses. Cohabitation alone is not justification to terminate spousal support, *Gayet v. Gayet* 92 N.J. 149 [456 A.2d 102] (1983), since the test for spousal support is the financial needs of the dependent spouse. The question is whether or not the relationship has reduced the needs of the dependent former spouse. However, the facts to assess the financial needs are most appropriately within the grasp of the spouse seeking the continuation of support. Therefore, upon a showing of cohabitation, the burden shifts to [ex-wife] to show facts which would justify a continuing need for support. *Frantz v. Frantz*, 256 N.J.Super. [90, 606 A.2d 423] (Ch.Div.1992). [Ex-wife] has not met this burden, since no facts were advanced by [ex-wife] to show a continuing need for support, most specifically, the financial circumstances of her cohabitant.

The judge terminated spousal support, effective July 1, 1995 "based upon the diminished health of the [ex-husband], the need for possible future medical care and treatment due to a serious health condition, the cohabitation of the [ex-wife] and the [ex-wife's] re-training and full-employment, . . ."

Ex-wife appeals contending that the termination of alimony was an abuse of discretion and not substantiated by the record.

We agree with the judge's finding that the ex-husband made a *prima facie* showing of cohabitation. We also agree with the judge's conclusion that upon such a showing, "the burden shifts to the ex-wife to show facts which would justify a continuing need for support." However, we disagree with the judge's finding that the evidence here supports a total rather than partial elimination of alimony.

It is important to note that the settlement agreement was silent on the issue of cohabitation and its impact on spousal support. We must therefore decide the issue based on decisional law rather

than by construing the settlement agreement. *See Konzelman v. Konzelman,* 307 *N.J.Super.* 150, 704 *A.*2d 591 (App.Div.1998) (holding that when the parties so agree, the event of cohabitation is sufficient to terminate spousal support.)

An alimony award is subject to modification when there has been a showing of changed circumstances. *Lepis v. Lepis,* 83 *N.J.* 139, 148, 416 *A.*2d 45 (1980). Among the changed circumstances to be considered by trial courts is "the dependent spouse's cohabitation with another...." *Id.* at 151, 416 *A.*2d 45. However, although cohabitation by a supported spouse may constitute changed circumstances justifying discovery and an evidentiary hearing, modification is called for when "(1) the [cohabitant] contributes to the dependent spouse's support, or (2) the [cohabitant] resides in the dependent spouse's home without contributing anything toward the household expenses." *Gayet v. Gayet,* 92 *N.J.* 149, 153, 456 *A.*2d 102 (1983) (citing *Garlinger v. Garlinger,* 137 *N.J.Super.* 56, 64, 347 *A.*2d 799 (App.Div.1975)).

There are no appellate decisions that provide guidance to trial courts regarding which party bears the burden of proof once a *prima facie* showing of cohabitation has been made. In *Grossman v. Grossman,* 128 *N.J.Super.* 193, 197, 319 *A.*2d 508 (Ch.Div. 1974), the trial judge concluded that cohabitation creates a rebuttable presumption of changed circumstances requiring the supported spouse to come forward with proof that the need for support remains the same. *Grossman* was cited with approval in the dissent to *Gayet* by Justice Schreiber. *Gayet, supra,* 92 *N.J.* at 156, 456 *A.*2d 102. However, *Grossman* is not cited in the majority opinion with either approval or disapproval. In *Frantz v. Frantz,* 256 *N.J.Super.* 90, 92–3, 606 *A.*2d 423 (1992), the trial judge concluded that once a *prima facie* showing of cohabitation has been made, the burden of proof shifts to the dependent spouse.

We agree with the holdings in *Grossman* and *Frantz.* There is a rebuttable presumption of changed circumstances arising upon a *prima facie* showing of cohabitation. The burden of

proof, which is ordinarily on the party seeking modification, shifts to the dependent spouse. We agree with Judge Sullivan "that it would be unreasonable to place the burden of proof on a party not having access to the evidence necessary to support that burden of proof." *Frantz, supra,* 256 *N.J.Super.* at 93, 606 *A.*2d 423.

■ Here, although ex-wife's cohabitation with A.M. provided her with a financial benefit, the record does not justify a total termination of alimony for several reasons. Ex-wife testified that, at most, the benefit derived from cohabiting with A.M. was $600 per month, yet the judge terminated $850 per month alimony. The judge's finding that ex-husband lacks the ability to pay alimony based on his medical expenses is not supported by the proofs. Although his medical condition is serious, it has not yet affected his earning capacity. Ex-husband testified that he has continued to work despite his prostate cancer. He is presently earning $60,000 per year which is approximately the same income level as for the last six years. He has failed to quantify his anticipated unreimbursed medical expenses.

■ Finally, the judge did not factor in the principle that the amount of alimony here was set originally by the parties themselves. Such an agreement ordinarily entails trade-offs between the parties. Although alimony ordinarily is subject to modification, the judge may consider such trade-offs and equitable distribution as a factor in determining alimony modification. *Lepis, supra,* 83 *N.J.* at 145–55, 416 *A.*2d 45. *See also, Shifman v. Shifman,* 211 *N.J.Super.* 189, 195, 511 *A.*2d 687 (App.Div.1986). Here, ex-wife asserts in her brief that she "waived any right to Mr. Ozolins pension, as well as trade-offs on other items in equitable distribution in consideration for receiving a permanent alimony award of $1,500.00 per month."

Reversed and remanded for modification of the amount of alimony in accordance with this opinion.